# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jed A. Fisher, having been duly sworn according to law, state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and assigned to the Philadelphia Division, Fort Washington Resident Agency, Pennsylvania, and I have been employed as an FBI Special Agent since March of 2017.

2. As a Special Agent with the FBI, my duties include the investigation of international and domestic terrorism and fraud, including tax fraud and health care fraud. As a Special Agent, I have participated in the execution of numerous search and arrest warrants, pursuant to which I have seized evidence of plans to conduct and/or participate in fraud-related activity. I have conducted physical and electronic surveillance, debriefed confidential sources, analyzed information obtained from court-authorized pen register and trap and trace intercepts, and participated in the drafting and execution of search and arrest warrants involving these matters.

3. I am the case agent assigned to a criminal investigation of those involved in a fraudulent scheme under which individuals obtained Pennsylvania Commercial Driver's Licenses without taking the Pennsylvania Commercial Driver's License ("CDL") examination.

4. The information set forth below is either known to me personally, or was related to me by other law enforcement personnel. As this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during this investigation.

5. For the reasons stated below, there is probable cause to believe that ROBERTO CORREAS conspired with others to commit wire fraud, in violation of 18 U.S.C. § 1349, and committed the substantive offense of wire fraud, in violation of 18 U.S.C. § 1343, all within the Eastern District of Pennsylvania.

6. I base this affidavit on my personal investigation and information obtained by other FBI agents, as well as law enforcement partners with the United States Department of Transportation (USDOT), Office of the Inspector General and Pennsylvania State Police (PSP).

**BACKGROUND**

7. Co-Conspirator 1 currently owns and operates a CDL training school "(CDL School A") in Philadelphia, Pennsylvania. In exchange for a fee, Co-Conspirator 1 provides clients with training necessary to achieve a passing score on a Pennsylvania state-mandated CDL driving skills examination.

8. During the course of this investigation, I learned that a person is eligible to attempt a CDL driving skills examination in Pennsylvania after obtaining a valid CDL permit from their state of residency.

9. In Pennsylvania, CDL driving skills examinations are administered by: (a) employees with the Pennsylvania Department of Transportation ("PennDOT") with examinations administered at PennDOT driver's license centers; or (b) Certified CDL Third-Party Examiners who are commercially employed persons certified to conduct CDL examinations on behalf of PennDOT. PennDOT examiners and Third-Party Examiners are both considered to be Pennsylvania CDL examiners and, as such, are agents of PennDOT.

10. PennDOT is a Pennsylvania state agency which receives benefits in excess of $10,000 in any one-year period under a federal program involving a grant, contract, program, subsidy, loan guarantee, insurance, or other form of federal assistance.

11. Examinations by Third-Party Examiners are administered at private testing facilities in Pennsylvania. The Third-Party Examiners electronically input and/or upload CDL examination data, to include scheduling and examination results, into a commercial database known as the Commercial Skills Testing Information Management System ("CSTIMS").

12. Computer servers utilized to store CSTIMS data are physically located in both Virginia and Illinois. Data entered by a CDL examiner in Pennsylvania is transmitted across state lines via the internet to CSTIMS servers located in Virginia and Illinois. In turn, respective state department of motor vehicles agencies communicate with CSTIMS' servers to determine if a CDL candidate has satisfied the requirements necessary to be issued a lawful CDL.

13. The Berks Career and Technical Center ("BCTC"), in Leesport, Pennsylvania, is a Pennsylvania accredited third-party CDL school and examination center.

14. During the course of this investigation, I learned that Co-Conspirator 1 charged clients of CDL School A, on average, between $1,700 and $2,000 for CDL training. This fee is consistent with the practices of other CDL training facilities in the Philadelphia area. However, I also learned that Co-Conspirator 1 provided clients with an alternative to legitimately passing a CDL exam to obtain their CDL. For a cost of approximately double the normal rate, Co-Conspirator 1 arranged for a student to receive a passing score, which was entered into CSTIMS, without actually taking the CDL driving skills examination.

15. An individual who obtains a CDL is able to obtain more lucrative employment as a commercial driver and, therefore, a Pennsylvania CDL has a value of $5,000 or more.

## THE SCHEME

### Information from Cooperating Witness 1

16. In January 2019, a cooperating witness ("CW1")[1] described a criminal scheme through which clients of Co-Conspirator 1's CDL training school, CDL School A, were able to obtain their Pennsylvania CDLs without taking the actual CDL examination.

17. According to CW1, as part of the scheme, Co-Conspirator 1 would schedule a number of his clients to take their CDL exams at BCTC on the same date. On paper, co-conspirator Jeffrey Bell, charged elsewhere, who was a third-party CDL examiner employed by BCTC, was listed as these clients' examiner. Bell did not test all of Co-Conspirator 1's clients scheduled for that date and, thus, some of Co-Conspirator 1's clients were granted passing scores without completing any form of testing.

18. Prior to testing, Co-Conspirator 1's clients would send their personal identifying information to Co-Conspirator 1's cellular phone via text message, and Co-Conspirator 1 would then electronically forward the client information to Bell.

19. Bell then used that client information to create a registry in the CSTIMS database for each of those clients, which allowed Bell to schedule a CDL exam for each of those clients, and then later enter results of a Pennsylvania CDL road examination into the CSTIMS database for each of those clients, with Bell affirming that he had conducted those road examinations for each of those clients of Co-Conspirator 1.[2]

---

[1] In 2019, CW1 entered a guilty plea, pursuant to a cooperation plea agreement with the Government, to conspiracy and multiple counts of access device fraud and aggravated identity theft in the Eastern District of Pennsylvania. CW1 was sentenced on July 1, 2020. The Government requested a sentence below the sentencing guidelines and mandatory minimum sentence for the aggravated identity theft counts and CW1 was sentenced to a term of 16 months' imprisonment, a sentence below the Sentencing Guidelines and mandatory minimum sentence for those offenses.

[2] As detailed above, data in the CSTIMS database is transmitted to, or retrieved by, individual state Departments of Motor Vehicles.

**PennDOT Audit of BCTC**

20. In the fall of 2018, PennDOT conducted both an overt and covert audit of BCTC. The audit identified irregularities in BCTC's CDL examination program, including a finding that BCTC's CDL examination passing rate was over 90%, a rate significantly higher than the state average passing rate.

**PennDOT Interview of Co-Conspirator Jeffrey Bell**

21. In November 2018, PennDOT representatives interviewed co-conspirator Jeffrey Bell. During that interview, Bell admitted to using CDL examination score sheets, which were pre-signed by defendant ROBERTO CORREAS, a BCTC CDL program supervisor and Pennsylvania certified CDL third-party examiner, to create paper records falsely reflecting that individuals passed CDL examinations conducted by CORREAS. An examiner's signature on a scoring sheet is an attestation that the signee personally conducted the CDL examination. Bell's use of the score sheets pre-signed by CORREAS allowed Bell to circumvent the CSTIMS system default rules which limited CDL examiners to scheduling and/or conduct five complete examinations per day.[3] By using the score sheets pre-signed by CORREAS, Bell was able to fraudulently enter up to ten passing examination scores per day instead of his daily limit of five examinations.

22. In February 2019, I interviewed co-conspirator Jeffrey Bell. During this interview, Bell admitted to accepting from Co-Conspirator 1 multiple cash payments between 2015 and October 2018, totaling more than $10,000, in exchange for giving Co-Conspirator 1's clients passing scores on CDL examinations during that time frame. Bell admitted that he did not properly test some of Co-Conspirator

[3] This limitation on number of tests allowed to be administered on any one day is set by PennDOT, as reflected in that the CSTIMS system only allows five complete exams to be evaluated and/or scheduled for one day. If more than five full exams are scheduled or evaluated, PennDOT receives a notification which may trigger an overt or covert audit. As a practical matter, PennDOT assesses that each full exam requires approximately two hours to complete, and each exam must be conducted during daylight hours.

1's clients and, in some cases, did not test Co-Conspirator 1's clients at all, but he entered passing scores for those clients into CSTIMS, thus authorizing those clients of Co-Conspirator 1 to receive their CDL. According to Bell, he participated in this fraudulent activity with Co-Conspirator 1 from approximately 2015 through October 2018, and estimated he received more than fifty separate cash payments, ranging between approximately $200 to $300, from Co-Conspirator 1 to pass Co-Conspirator 1's clients regardless of those clients' actual driving abilities.

23. Co-Conspirator Bell admitted that he falsely generated passing CDL examination scores on score sheets that he signed and that had been pre-signed by ROBERTO CORREAS, for clients of Co-Conspirator 1 who had not taken any portion of the CDL examination, and that he electronically uploaded these false scores into the CSTIMS database, creating a chain of events that ultimately led to the issuance, on the part of multiple states, of a lawful CDLs for those clients of Co-Conspirator 1.

24. In November 2019, I reviewed records obtained from BCTC, including time and attendance sheets and payroll records for defendant ROBERTO CORREAS and co-conspirator Bell. I also reviewed PennDOT records of all examinations conducted at BCTC while CORREAS and Bell were employed there. The PennDOT records include information which was uploaded by CORREAS and Bell into CSTIMS. Specifically, the PennDOT data includes the dates and times of reported CDL exams, the names of the examiner and examinee, the duration of the reported examination, the commercial vehicle utilized during the reported exam, and a reported pass or failure status for each examinee.

25. A comparison of the BCTC data against the CSTIMS and PennDOT data corroborates information I learned from other sources during this investigation, including the following:

a. March 10, 2018.

(1) Co-conspirator Jeffrey Bell's signed time sheets show he was not present at work on March 5, 2018.

(2) From my review of CSTIMS login information, I know that Bell logged into the CSTIMS system at 12:17 p.m. on March 5, 2018 for a brief session.

(3) My review of Co-Conspirator 1's telephone records shows that Co-Conspirator 1 sent five text messages to Bell from 2:32 p.m. to 2:41 p.m. on March 5, 2018.

(4) From CSTIMS login information, I know that Bell next logged into CSTIMS on March 7, 2018 at 5:40 a.m. and scheduled five exams to be performed by him and five exams to be performed by ROBERTO CORREAS on Saturday, March 10, 2018.

(5) From my review of BCTC records, including signed time sheets, I know that that ROBERTO CORREAS was scheduled off from work on Saturday, March 10, 2018 and did not work on that date.

(6) PennDOT and CSTIMS data reflect that all 10 students of Co-Conspirator 1's CDL School A were granted passing scores for exams allegedly conducted by both ROBERTO CORREAS and Bell on March 10, 2018.

(7) CSTIMS records reflect that ROBERTO CORREAS and Bell allegedly conducted simultaneous road tests of two individuals, U.S. and L.S., on March 10, 2018, beginning at 4:00 p.m., using the same vehicle, Pennsylvania tag AG34839, which was registered to Co-Conspirator 1.

(8) On Sunday, March 11, 2018, Bell logged into CSTIMS at approximately 1:16 p.m., and uploaded 10 passing scores for the exams allegedly conducted by ROBERTO CORREAS and Bell on March 10, 2018, including the exams for U.S. and L.S.

b. February 16, 2018.

(1) On February 13, 2018, Co-Conspirator 1 and Bell exchanged more than 20 text messages.

(2) At approximately 11:52 a.m. on February 13, 2018, Bell logged into the CSTIMS system and scheduled two exams to be conducted by ROBERTO CORREAS. and five exams to be conducted by Bell on February 16, 2018.

(3) My review of BCTC's signed time sheets shows that neither ROBERTO CORREAS nor Bell were present for work on February 16, 2018.

(4) On February 19, 2018 at approximately 5:02 a.m., Bell logged into the CSTIMS system and falsely input passing scores for the seven individuals allegedly tested by CORREAS and Bell on February 16, 2018.

(5) Additionally, my review of PennDOT records shows that ROBERTO CORREAS and Bell allegedly conducted examinations at the same time, using the same commercial vehicle, Pennsylvania tag AG54616, which was owned by Co-Conspirator 1.[4]

26. On or about February 19, 2019, I conducted a voluntary interview with ROBERTO CORREAS. In that interview, CORREAS admitted that he had provided co-conspirator Jeffrey Bell with CDL testing score sheets that CORREAS had pre-signed. According to CORREAS, he had personally built the BCTC CDL program into a successful operation through his efforts to recruit

[4] PennDOT records also revealed that Bell's son was tested by ROBERTO CORREAS on May 2, 2018, with the examination starting at 6:00 p.m., and ending at 7:30 p.m. Bell's son was granted a passing score. According to his BCTC timesheet, however, CORREAS stopped working that day at 4:00 p.m. Bell's BCTC timesheet for that date shows that he was present at work at BCTC from 3:30 p.m. to 9:30 p.m.

and train students, he believed that the program's high pass rates for students obtaining their CDLs was indicative of a successful program and an indicator of his successful management at BCTC. According to CORREAS, he provided the pre-signed score sheets to Co-Conspirator Bell so that Bell could pass more of Co-Conspirator 1's students. In addition, BCTC charged third party testing examinees between $275 and $300 to conduct the CDL test and, therefore, BCTC's revenues, under CORREAS' supervision, increased with the passing test scores entered by Bell for which no tests had been done. CORREAS also stated that he had provided blank pre-signed CDL score sheets to J.P., another employee of BCTC who conducted CDL examinations.

27. During the February 19, 2019 interview, ROBERTO CORREAS also admitted to stealing CDL examination fees paid by students that he tested at BCTC. Those exam fees, which were to be paid to BCTC, were in the form of money orders.

28. In March 2020, I reviewed ROBERT CORREAS' personal checking account information account ending in 2000, obtained from Visions Federal Credit Union ("Visions FCU"), which is headquartered in Endicott, New York. In reviewing CORREAS' account information, I observed that CORREAS deposited twenty (20) money orders into that account in September and October 2018. Some of those deposited money orders contained personal identifying information that was inconsistent with CORREAS' other banking activity. For example, a $275.00 money order, with the name, home address and signature of S.S. was deposited into CORREAS' account on or about September 26, 2018. In reviewing PennDOT data, I observed a signed CDL score sheet indicating that S.S. was tested by CORREAS at BCTC on September 26, 2018. I also reviewed BCTC records of payments and learned that BCTC had no record of payment for a third-party test for S.S., but CORREAS had certified to the Commonwealth of Pennsylvania that he had tested S.S. at BCTC on September 26, 2018.

29. I reviewed additional money orders deposited by CORREAS into his Visions FCU account ending in 2000 and compared that information to PennDOT testing records and BCTC payment records. My review identified the following twenty (20) instances in September and October 2018, listed by date of deposit, in which CORREAS certified that he tested a student at BCTC but deposited the student's exam fee paid by money order into his Visions FCU personal checking account ending in 2000 at a Visions FCU location in Reading, Pennsylvania or Westlawn, Pennsylvania, both in the Eastern District of Pennsylvania:

| Date of Deposit in CORREAS' account | Initials of Student Listed as Examined | Listed Examination Date | Listed Examiner | Money Order Amount | BCTC Record of Payment (Y/N) | Information Contained on Money Order |
|---|---|---|---|---|---|---|
| 09/14/2018 | B.A. | 09/14/2018 | CORREAS | $275 | No | None |
| 09/14/2018 | F.B. | 09/14/2018 | CORREAS | $275 | No | None |
| 09/14/2018 | V.M. | 09/14/2018 | CORREAS | $275 | No | None |
| 09/14/2018 | R.S. | 09/14/2018 | CORREAS | $275 | No | None |
| 09/25/2018 | U.A. | 09/24/2018 | CORREAS | $100 | No | U.A.'s address |
| 09/25/2018 | Z.B. | 09/24/2018 | CORREAS | $275 | No | Z.B.'s address and signature |
| 09/25/2018 | I.B. | 09/24/2018 | CORREAS | $275 | No | I.B.'s address |
| 09/25/2018 | Z.I. | 09/24/2018 | CORREAS | $225 | No | Z.I.'s address and signature |
| 09/25/2018 | M.O. | 09/24/2018 | CORREAS | $225 and $50 | No | M.O.'s address and signature |
| 09/26/2018 | M.A. | 09/26/2018 | CORREAS | $275 | No | M.A.'s address and signature |
| 09/26/2018 | S.S. | 09/26/2018 | CORREAS | $275 | No | S.S.'s name, address and signature |
| 10/20/2018 | K.K. | 10/19/2018 | CORREAS | $275 | No | K.K.'s address and signature |
| 10/20/2018 | A.M. | 10/20/2018 | CORREAS | $275 | No | A.M.'s address and signature |

| **Date of Deposit in CORREAS' account** | **Initials of Student Listed as Examined** | **Listed Examination Date** | **Listed Examiner** | **Money Order Amount** | **BCTC Record of Payment (Y/N)** | **Information Contained on Money Order** |
|---|---|---|---|---|---|---|
| 10/20/2018 | B.S. | 10/20/2018 | CORREAS | $275 | No | B.S.'s address and signature |
| 10/20/2018 | S.S. | 10/19/2018 | CORREAS | $275 | No | S.S.'s address and signature |
| 10/20/2018 | A.U. | 10/20/2018 | CORREAS | $275 | No | A.U.'s address and signature |
| 10/20/2018 | A.V. | 10/19/2018 | CORREAS | $275 | No | A.V.'s address and signature |
| 10/22/2018 | K.K. | 10/22/2018 | CORREAS | $275 | No | K.K.'s address and signature |
| 10/22/2018 | A.K. | 10/22/2018 | CORREAS | $275 | No | A.K.'s address and signature |
| 10/22/2018 | U.Y. | 10/20/2018 | CORREAS | $275 | No | U.Y.'s name |

30. I learned from a representative of Visions FCU that the credit union's computer servers are located in Syracuse and Endicott, New York and, thus, by making the deposits listed above at a Visions FCU branch in Reading or Westlawn, Pennsylvania, ROBERTO CORREAS caused to be transmitted by means of wire communication in interstate commerce the details of those deposits through one of Vision FCU's servers in New York.

31. Wherefore, based on my training, experience, and knowledge of this investigation, I have probable cause to believe, and do so believe, that, ROBERTO CORREAS: (a) as an agent of PennDOT: conspired with others, including co-conspirator Jeffrey Bell and Co-Conspirator 1, to commit wire fraud, through the submission of fraudulent CDL examination information, via interstate wire, to CSTIMS, in violation of 18 U.S.C. § 1349; and (b) obtained money by false or fraudulent pretenses and caused to be

transmitted by means of wire communication in interstate commerce writings or signals for the purpose of executing that scheme, in violation of 18 U.S.C. § 1343. I therefore request that a warrant be issued for his arrest.

Respectfully submitted,

__*/s Jed. A. Fisher*_______
JED A. FISHER
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me
on September 15, 2021:

_______*/s Honorable Carol S. Moore Wells*__
HONORABLE CAROL S. MOORE WELLS
UNITED STATES MAGISTRATE JUDGE